2009 UT App 33

STATE of Utah, Plaintiff and Appellee,

v.

Brandon Kyle ROWLEY, Defendant and Appellant.

No. 20070489–CA.

Court of Appeals of Utah.

Feb. 12, 2009.

Margaret P. Lindsay, Spanish Fork, for Appellant.

Mark L. Shurtleff, atty. gen., and Kenneth A. Bronston, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1 Defendant Brandon Kyle Rowley appeals his convictions for possession of methamphetamine in a drug free zone, claiming that the evidence against him was seized in violation of the United States and Utah Constitutions. We affirm because searches and seizures by private parties who are not acting in concert with law enforcement officers do not implicate constitutional protections.

## BACKGROUND

¶ 2 In May of 2006, Rowley was taken into police custody for reasons not pertinent to the instant appeal. As he was taken away, Rowley asked his parents to take care of the things in the bed of his pickup truck, which was parked on the street in front of his parents' home. Rowley's father (Father) was concerned about possible weather damage to the items in the bed of the truck. Because Father could not lift the items, he opted to simply move Rowley's truck inside the garage.

¶ 3 While in the cab of the truck, Father saw a syringe containing an unknown substance and a porcelain cup containing a similar substance in an open cubby hole under the dashboard. Father took these items into

the house and showed them to his wife (Mother). Mother then searched the bags that were in the back of Rowley's truck and found a digital scale. Father contacted Story Provstgaard of the Utah County Sheriff's Office (the Officer), whom Father knew from an unrelated police matter, and informed him of what he and Mother had found in their son's truck. Father followed the Officer's instructions and returned the items to where they had been found. When the Officer arrived at Father's home, Father invited him into the garage and the Officer retrieved the evidence in question from Rowley's truck. The unknown substances in the syringe and the porcelain cup were later tested and determined to be methamphetamine.

¶ 4 Rowley was charged with possession of methamphetamine and drug paraphernalia in a drug free zone. Following a preliminary hearing, Rowley was bound over for trial. After losing his motion to suppress the evidence obtained from his truck, Rowley entered a conditional guilty plea to possession of methamphetamine in a drug free zone, reserving the right to appeal the trial court's denial of his motion to suppress. The trial court stayed the execution of Rowley's sentence pending the outcome of this appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Rowley challenges the trial court's denial of his motion to suppress the evidence obtained from his truck. We review a trial court's decision on this issue under a nondeferential, correctness standard. *See State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699 ("abandon[ing] the standard which extended 'some deference' to the application of law to the underlying factual findings in search and seizure cases in favor of non-deferential review").

## ANALYSIS

¶ 6 Rowley argues that the Officer's seizure of the incriminating evidence violated his rights guaranteed by the Fourth Amendment of the United States Constitution and

Article I, Section 14 of the Utah Constitution. *See* U.S. Const. amend. IV; Utah Const. art. I, § 14. Rowley centers his appellate argument on language in the trial court's order regarding the plain view doctrine, his parents' lack of actual or apparent authority to consent to the Officer's search of his truck, and the lack of exigent circumstances. These arguments, however, miss the significance of the trial court's factual findings and legal conclusions justifying the seizure on the ground that the evidence was discovered by Rowley's parents' private search of Rowley's truck, which did not implicate constitutional protections.[1]

¶ 7 The United States Supreme Court has long held that "[t]he Fourth Amendment gives protections against unlawful searches and seizures, and ... its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon ... sovereign authority, and was not intended to be a limitation upon other than governmental agencies." *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The protections of the Fourth Amendment are "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the [g]overnment or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (internal quotation marks omitted).

¶ 8 Courts have subsequently relied on *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652 (1984), for the proposition that, in situations where the private searchers repackage or replace the evidence before government agents arrive on the scene, the agents may legally re-search the area or container without a warrant—so long as the agents do not exceed the scope of the original private search. *See id.* at 119, 104 S.Ct. 1652 (stating that government agents could reopen a package that had already been searched and effectively resealed by private parties); *United States v. Moore*, 943 F.2d 884, 888

---

1. Rowley also does not argue that the private search doctrine should be applied differently in

the federal and state constitutional contexts.

(8th Cir.1991) (holding that "the legality of a subsequent government search is not dependent upon whether the private party conveys the [evidence] to a government agent in a sealed or unsealed condition, but rather, *whether the government search exceeds the scope of the antecedent private search*" (emphasis added)); *State v. Miller*, 2004 UT App 445, ¶ 10, 104 P.3d 1272 (allowing for the search of a briefcase previously searched and resealed by private individuals who then contacted the police, because the police search did not exceed the scope of the private search, in accordance with *Jacobsen*). The *Jacobsen* court based its "scope of the search" approach on the idea that a person's expectation of privacy, once lost as the result of a private-party search, cannot be restored by that same private party's mere resealing of the container prior to the government's arrival. *See Jacobsen*, 466 U.S. at 120, 104 S.Ct. 1652; *accord Miller*, 2004 UT App 445, ¶ 10, 104 P.3d 1272 (stating that a defendant's expectation of privacy in the viewed materials was extinguished by the private actors' search (citing *Jacobsen*, 466 U.S. at 115, 120, 104 S.Ct. 1652)).

¶ 9 In *United States v. Mithun*, 933 F.2d 631 (8th Cir.1991), the Eighth Circuit applied *Jacobsen*, focusing on the scope of the subsequent governmental search as compared to the antecedent private search, to privately discovered evidence found in an automobile. *See id.* at 634. In *Mithun*, hotel employees searched a guest's car and found incriminating evidence. *See id.* at 632. After they replaced the evidence and relocked the car, the employees contacted the police. *See id.* The employees took the responding officer to the car in question and, under the direction of the officer, re-searched the areas that they had already searched to produce the evidence. *See id.* at 632–33. This subsequent search involving the police officer was upheld based on the premise that the legality of the search and seizure in *Jacobsen* "d[id] not turn on whether the private party hands the [evidence] over to the government in a sealed or unsealed condition, so long as the government's subsequent warrantless search does not exceed the scope of the [prior] private search." *Id.* at 634 (third alteration in original) (internal quotation marks omitted). The *Mithun* court also equated a governmental re-searching of an automobile to the opening of a privately resealed package, stating that the reopening of a car is "no more significant" than the government having to open a package resealed by private actors, as was done in *Jacobsen*. *See id.*

¶ 10 In the instant case, just as in *Jacobsen*, *Mithun*, and *State v. Miller*, 2004 UT App 445, 104 P.3d 1272, the private party who performed the original search effectively "resealed" the container in which the evidence was found. We agree with the *Mithun* court that a private party's replacement of the items back into a vehicle is no more significant than the items having been found in a mailed package and replaced therein. Rowley's expectation of privacy in the contents of his truck was lost when his parents searched his truck and seized the evidence. Father's replacement of the evidence back into the truck in no way resuscitated Rowley's expectation of privacy, especially in light of the fact that Father had already informed the authorities of the evidence's existence and where it was located.[2] The Officer's subsequent search of the truck was therefore not a violation of Rowley's constitutional protections, unless it exceeded the scope of the prior search performed by Father and Mother.

¶ 11 On appeal, Rowley does not argue that the Officer exceeded the scope of his parents' private search of the truck, nor would the record support such an assertion. The Officer's search and seizure of the evidence in question does not, therefore, implicate Rowley's constitutional protections.

## CONCLUSION

¶ 12 The evidence Rowley seeks to suppress was found through a private search, which extinguished his expectation of privacy in the evidence. Under the private search doctrine outlined by the Supreme Court in

---

**2.** Rowley's appellate counsel appropriately conceded at oral argument that without the Officer's direction to Father to replace the discovered evidence back in the truck, Rowley would have no tenable argument against the application of the private search doctrine.

*Jacobsen* and recently relied upon by this court in *Miller*, a private party may reveal information to police without implicating constitutional protections. As long as the scope of the private search is not exceeded, the government may even re-search a container or an area already privately searched and resealed. The replacement of the evidence back into Rowley's truck, which is akin to the resealing of a container or package, is legally insignificant and did not restore Rowley's lost expectation of privacy. Because the Officer did not exceed the scope of the parents' original search, the Officer's seizure of the evidence in question did not violate any of Rowley's constitutional protections. The trial court therefore did not err in denying Rowley's motion to suppress.[3]

¶ 13 Affirmed.

¶ 14 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.

---

**3.** Because our decision based on the private search doctrine is dispositive, we do not address the other arguments Rowley advances on appeal.